CV-10 2159

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x
JOHN F. HUTCHINS, Individually and On
Behalf of All Others Similarly Situated,

                  Plaintiffs,

    vs.

NBTY, INC., SCOTT RUDOLPH, AND
HARVEY KAMIL,

                  Defendants.

———————————————————— x

Civil Action No.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS

JURY TRIAL DEMANDED

WEXLER, J.

WALL, M.J.

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by NBTY, Inc. ("NBTY" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of the common stock of NBTY between November 9, 2009 and April 26, 2010, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

5.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

- 1 -

## PARTIES

6.     Plaintiff John F. Hutchins, as set forth in the accompanying certification and incorporated by reference herein, purchased the common stock of NBTY during the Class Period and has been damaged thereby.

7.     Defendant NBTY manufactures, markets, and retails nutritional supplements in the United States and worldwide.

8.     (a)     Defendant Scott Rudolph ("Rudolph") was, at all relevant times, Chairman of the Board and Chief Executive Officer of NBTY.

(b)     Defendant Harvey Kamil ("Kamil") was, at all relevant times, President, Principal Operating Officer, Chief Financial Officer and Principal Accounting Officer of NBTY.

(c)     Defendants Rudolph and Kamil are collectively referred to herein as the "Individual Defendants."

9.     During the Class Period, the Individual Defendants, as senior executive officers and/or directors of NBTY, were privy to confidential and proprietary information concerning NBTY, its operations, finances, financial condition and present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning NBTY, as discussed in detail below. Because of their positions with NBTY, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

- 2 -

10.     The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of Section 20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of NBTY's business.

11.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

12.     As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the New York Stock Exchange ("NYSE") and governed by the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to NBTY's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of NBTY's common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

- 3 -

13.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of NBTY's common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding NBTY's business, operations and management and the intrinsic value of NBTY's securities;  (ii) allowed the Individual Defendants and certain Company insiders to collectively sell more than 1.6 million shares of their personally-held NBTY common stock for proceeds in excess of $73 million; and (iii) caused Plaintiff and members of the Class to purchase NBTY common stock at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of NBTY between November 9, 2009 and April 26, 2010, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

15.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, NBTY common stock was actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by NBTY or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

16.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

17.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

18.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of NBTY;

(c)     whether the price of NBTY common stock was artificially inflated during the Class Period; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

19.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

20.     Defendant NBTY describes itself as a "leading global vertically integrated manufacturer, marketer and distributor of a broad line of high-quality, value-priced nutritional supplements in the United States and throughout the world".

21.     The Class Period begins on November 9, 2009. On that date, NBTY issued a press release announcing its financial results for the fiscal fourth quarter and year end of 2009, the period ended September 30, 2009. For the quarter, the Company reported net sales of $674 million and net income of $63 million, or $1.00 per diluted share. Net sales for the Company's Wholesale/US Nutrition division, which markets various brands including Nature's Bounty, Osteo Bi-Flex, Rexall, Sundown, Ester-C, Solgar, and private label products, increased $46 million, or 13%, to $404 million. The Company also attributed the growth in net income to "greater sales, improved supply chain management and *effective controls of* selling, general & administrative and *advertising costs*." [Emphasis added.] Defendant Rudolph, commenting on the results, stated, in pertinent part, as follows:

> We are pleased to report record fourth quarter results. These results are indicative of the benefits achieved from the successful integration of the Leiner acquisition as well as our strategic position in the marketplace. We continue to benefit from our operating leverage and expect to maintain our global leadership position in the nutritional supplement industry.

22.     Following the fiscal fourth quarter and year end earnings announcement, Defendants held a conference call with analysts and investors. With regard to the Company's outlook on certain metrics, Defendant Kamil stated, in pertinent part, as follows:

> Advertising costs as a percentage of sales, 4.5. SG&A costs, give or take, will be about 28%. Interest costs $31 million. CapEx $66 million and depreciation $71 million. That's the best we could do. Once again, I'll leave it open to the questions now, operator.

With regard to the Company's advertising costs, Defendant Kamil stated, in pertinent part, as follows:

> Looking at other parts of the income statement, our advertising costs were $22 million or 3.3% of sales compared to about $32 million last year at this time of 5.2%. So when we look at advertising costs, and I'm going to repeat these numbers a couple of times, as we go -- on a going forward basis, we are anticipating for next year. Again, our best guess right now, we may -- we probably will not amend, due to these numbers. These are the best guess as we stand right now. We think our advertising costs on a going forward basis will be about 4.5% of sales. Looking at SG&A costs, SG&A costs have come down considerably. Again it was this year $185 million or 27.4% of sales compared to last year, which was a $200 million, but it was 33% of sales. On a going forward basis, we think for the -- for next year, that our SG&A costs will run in and around 28%. For the year, the advertising costs were 4.3% for this year compared to 64.% last year. So again, we have been advertising, we believe, more efficiently. As for the -- also for the year for SG&A costs, for the entire year, the number was 28.6%, compared to 32.1%. So as Scott said, stringent cost controls we believe has really helped us out.

With regard to the Company's revenue targets for 2010, Defendant Kamil stated, in pertinent part, as follows:

> LARRY SOLOW, ANALYST, CJS SECURITIES: Good afternoon. Last year, at the beginning of the fiscal year actually, you put out a target for revenue. I think you said $2.5 billion to $2.6 billion. You actually came amazingly close. Do you care to put out a target for fiscal 2010?
>
> HARVEY KAMIL: We thought -- actually, we thought we were over. I thought we were a little higher. We are very concerned --
>
> LARRY SOLOW: (inaudible)
>
> HARVEY KAMIL: Yes, well if that is what we said, then I guess we hit it on the nose. Again, we put out our sales numbers what they were for October. We know nothing more than what we have there. We would anticipate sales increases in the high single digits. But more than that, we would like to refrain from coming out with a sales number.

With regard to the Company's expenses, Defendant Kamil

> ED AARON: All right. And then could you kind of give us a bit of an outlook for 2010? I think most of the line items look pretty good. The one that I thought would -- I thought that the SG&A was maybe a little bit higher than what I might have expected, just given what you have shown the last couple of quarters. Is there -- first

of all, is there a reason for the sequential increase in SG&A from Q3 to Q4? And then why you might not not be able to see some leverage in 2010?

HARVEY KAMIL: I don't know. As you know, the SG&A costs are made up of 20 or 30 different items. And so, we really do not look at it sequentially. We look at it more as a percentage of sales, and I couldn't tell you why. If it was increased, we didn't even focus in on that. Because we are looking at it as a percentage, there's all sorts of stuff in there. So we think we did pretty well, actually. So as the numbers come down, the number of when we start getting, again, it was a 27.4%, that's -- to us -- that's pretty efficient for us.

23.     In response to these announcements, shares of the Company's stock rose $0.85 per

share, or 2%, to close at $40.38 per share, on November 9, 2009.

24.     On November 19, 2009, Defendants attended the Citi - Small/Mid Cap Conference.

With regard to the Company's advertising costs, Defendant Kamil stated, in pertinent part, as

follows:

GREGORY BADISHKANIAN: Can you take -- a little bit about maybe marketing spend and also SG&A. You mentioned that the last two quarters are maybe more indicative of kind of future performance. Where do you expect that to be kind of over the next few quarters?

HARVEY KAMIL: Well, again, we did announce the numbers. We said that we believe our advertising costs will be about 4.5% of sales. Remember, that sales number is a static number. So obviously, if sales move up, the -- as a percentage, it'll come down. But on SG&A costs, we said we would use a number of about 28%, but again we used that number and in terms of a static number. The -- in Q4, our SG&A costs were 27.4%. We were using a more conservative so we said use about -- if it's 27.4%, use about 28%, but we did not -- certainly as sales move up, we would assume that that number is going to come down.

So we are looking for very dynamic operations for the next -- for fiscal 2010.

GREGORY BADISHKANIAN: What was advertising? Was it 4.5%?

HARVEY KAMIL: It was about 3.5% for Q4 and we didn't want anyone to use that number because we're going to be much more active in our advertising. So that's why we said about 4.5%. But remember, these are all general numbers. We don't give -- normally, we will not, it's not that we don't want to give you the numbers. It's that this market is too vibrant and you just never know what's going to happen so that we have not given, we don't give comfort to numbers. But we would just give you a general direction as to approximately where we're going to be and those are the approximate numbers. But I think the concern that people had was when we said it

- 8 -

was about 28% SG&A cost. That was at a static sales number and not a number that would increase.

25.     On December 2, 2009, Defendants attended the JPMorgan - Mid Cap Conference. With regard to the Company's gross profits in relation to its private label business, Defendant Kamil stated, in pertinent part, as follows:

> Again, looking at our gross profits, our wholesale gross profit has decreased over the last couple of years. Again, that is the reason-- Again, looking at the chart, the red is the total gross profit; the blue is just the wholesale gross profit. And, again, what's happening is we are-- As we pick up a large amount of private label business, our gross profit will come down. But we expect our gross profit dollars will increase. So we are-- As you can see from this past chart, you see that we are-- our gross profit has gone up in wholesale since March of 2009, when we were plagued by high raw material costs from the Leiner acquisition, and it has now stabilized.

26.     On January 12, 2010, the Company issued a press release announcing its preliminary net sales results for December and fiscal first quarter.  The Company reported a 16% increase in sales for its Wholesale/US Nutrition division, compared to the previous year.

27.     On January 28, 2010, NBTY issued a press release announcing its financial results for the fiscal first quarter of 2010, the period ended December 31, 2009.  For the quarter, the Company reported net sales of $751 million and net income of $76 million, or $1.18 per diluted share. Defendant Rudolph, commenting on the results, stated, in pertinent part, as follows:

> We are pleased to report record results for the quarter. Our significant increase in revenue and profitability reflect NBTY's on-going initiatives to improve operations, control costs and expand our premiere position as the leading nutritional supplement company. Our growing financial strength continues to play a vital role in generating future growth and shareholder value.

With regard to the Company's net income, the press release stated, in pertinent part, as follows:

> Net income for this fiscal first quarter of 2010 reflects greater sales and improved supply chain management, both of which contributed to higher gross profits in all divisions. The overall gross profit percentage increased 4% to 45%. ***Selling, general & administrative costs decreased to 25% of sales for the fiscal first quarter of 2010 as a result of cost containment initiatives, and advertising costs decreased to 4% of sales for this period.*** These improvements in efficiency resulted in a $10 million

decrease in SG&A and advertising costs compared with the prior like quarter. [Emphasis added.]

With regard to the Company's net sales for the Wholesale/US Nutrition division, the press release stated, in pertinent part, as follows:

> Net sales for the Wholesale/US Nutrition division, which markets various brands including Nature's Bounty, Osteo Bi-Flex, Rexall, Sundown, Ester-C, Solgar, and private label products, increased $64 million, or 16%, to $471 million. Private label sales were $198 million, or 42% of total wholesale sales.

28.     Following the fiscal first quarter earnings announcement, Defendants held a conference call with analysts and investors. With regard to the Company's advertising costs, Defendant Kamil stated, in pertinent part, as follows:

> In terms of advertising, instead of giving you now a percentage of sales, because our sales have moved up, we are anticipating that our advertising expenses will be about $120 million for the fiscal year this year.

> *     *     *     *

> ED AARON, ANALYST, RBC CAPITAL MARKETS: Nice job on the quarter. Harvey, I was hoping you could maybe go back. Last quarter, you gave some SG&A percent of sales -- not necessarily formal guidance, but some direction for 2010, and these numbers imply just something that's pretty significantly different from what you were talking about back then, and I'm just trying to reconcile that a little bit since it was only about 90 days ago.

> HARVEY KAMIL: Yes, we were wrong. We were wrong.

> ED AARON: Okay. That's fair.

> HARVEY KAMIL: We took the conservative approach. We were taking a general percentage of where we would be. We looked at the last year, took an average of last year. We were wrong.

> *     *     *     *

> SCOTT SCHER, ANALYST, CLOVIS CAPITAL: Harvey, can you just go back to this SG&A question? You know, 90 days ago you said 26 to 28. When asked the question earlier, you said that the majority of your costs are fixed. And then when asked the question again, you say, well, how can you be wrong in 90 days? You said, well, we were wrong.

So, while it may make people feel comfortable because you beat the number, it doesn't actually make an investor feel comfortable that you can be off by $10 million to $15 million in a quarter when you're suggesting that a lot of the expenses are fixed.

So it could be that sales were above plan, so on a percentage basis, it came in lower. But if you're saying on a whole-dollar amount that you think the number is going to stay at this level, then that implies that SG&A for the year is going to be $40 million below what your number would have implied in the beginning of the year, and that seems like a big number. So can you help me where the big movements are because a 90-day movement suggests that your planning is not doing such a good job.

HARVEY KAMIL: I accept your criticism, and again, the -- it was based upon -- when we wanted -- we wanted to give you the -- at the time, the best guess that we had, or as we could see it.

You are correct. Our sales are higher than originally anticipated. And we have been controlling costs. It was that. It is -- we always felt there is a possibility of being able to, as sales move up, that that SG&A percentage would start coming -- the SG&A number stays the same, the percentage will come down.

Look, we've had the sales increases of 14%. We -- if someone asked us 90 days ago where we think our sales will move, I would've said it was half that amount. So, we can't guess the future.

So, once again, we are doing the best we can in terms of projecting to the future. Our -- our SG&A costs are mainly -- and you also have to understand where they are. They are -- the numbers are, first, payroll costs -- payroll and fringes.

And then a good portion is rents, rents here in the United States as well as the United Kingdom. As the -- if the British pound sterling moves up or down, those rents are then converted into U.S. dollars, and that will vary.

And we are also, by the way, what we've been doing is we've instituted a whole bunch of cost savings in our freight out, which is also in SG&A costs, so we've saved money there.

But, no, we don't take it lightly that, in fact, that we've -- as you said, we are very pleased that the numbers are being controlled. We were giving you the best number at the time, because I think had business not come through the way it was, I think I would've gotten the criticism of why did you tell me it was 27 when it's 29?

[INAUDIBLE]

SCOTT SCHER: Instead of offering in percentages, which obviously there's a circular that's forcing you to guess revenues, which is our job, why don't we just talk about in whole numbers? I think that will be a constructive way to move forward, which you did do on catalogue and promotions. You said $120 million. That's fine.

You control the number, so we should ask for that, and if you're willing to give it to us, that's constructive. I guess the right way to say, and the same thing in SG&A, if you believe a lot of it's fixed, then let's just talk about whole numbers, and it's our job and the other 72 people on the call to figure out what we think the sales are going to be.

If you give us the whole numbers on the expenses, we will make our assumptions on revenue. And that's probably a more thoughtful way to do it to make it more transparent thing so everyone feels like they are on the same page.

HARVEY KAMIL: The categories in our -- the basic categories in our SG&A costs are about 12.5 different items. And I would -- I am incapable of guessing the future and telling you where those numbers are going to be.

Part of the number is, of course, as we said, is payroll, and a part of the numbers are rent, which we just said will vary up and down based upon the foreign exchange.

We then have other costs. We have professional fees, we have legal costs, we have all sorts of stuff that come in, like in freight costs. And so, we have tried to do our best. We are again we are pleased that we are at 25.1 right now. We feel that 25.1 is -- happens to be a very efficient number.

But, again, other than that, I can't -- I don't have the ability to tell you where it's going to be next quarter. We just don't have that. (multiple speakers)

SCOTT SCHER: (Multiple speakers) you just said that a lot of these expenses are fixed. So if they are fixed, are you comfortable with the 188? Forget the percentages, I'll make my guess on the revenues. Are you comfortable with 188 as a comfortable number looking throughout the year, give or take 5 million around?

HARVEY KAMIL: No, I'm not. (Multiple speakers)

SCOTT SCHER: So then it's not fixed.

HARVEY KAMIL: Well, when we say it's fixed, what we're saying is that a good portion of it is fixed. In fact, what we are seeing when we look at our -- again, looking strictly at our SG&A and our payroll and fringes, last year's number -- again, we did not increase payroll, salaries, and fringes. So they were just about the same number this last year to this year.

So we say they're fixed, I meant in terms of that they are -- as the volume moved up, that was not affected. However, I am -- that's -- by the way, we have 40 people in accounting right now doing all these numbers. You're telling me I can determine -- if I could determine the number, I wouldn't need the 40 people sitting in there with various -- with tons of computers and Excel worksheets to be able to determine what the numbers are.

- 12 -

> We will try to report our numbers as quickly as we can. We'll try to be as transparent as we can, and we've always never -- we've always tried to be, to some degree, conservative in our estimates so that we don't disappoint people. But more than that, I can't tell you.

29. In response to these announcements, shares of the Company's stock rose $1.68 per share, or 4%, to close at $44.91 per share, on January 28, 2010.

30. On February 9, 2010, the Company issued a press release announcing its preliminary unaudited net sales results for January 2010. The Company reported a 22% increase in sales for its Wholesale/US Nutrition division, compared to the previous year.

31. The statements referenced above in ¶¶21, 22, 24-28 and 30 were each materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them:

(a) that the Company was experiencing a significant disruption in its private label business and a related decrease in demand for its private label products;

(b) that the Company's advertising costs were escalating far in excess of the Company's internal forecasts; and

(c) as a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company and its prospects.

32. Then, on April 27, 2010, the Company issued a press release announcing its financial results for the fiscal second quarter of 2010, the period ended March 31, 2010. For the quarter, the Company reported net sales of $705 million and net income of $47 million, or $0.73 per diluted share. According to the press release, net income was "adversely affected by the Company's increased television advertising to support its Nature's Bounty, Osteo Bi Flex, Ester C and Pure Protein brands. Accordingly, advertising costs were $51 million, an increase of $18 million, or 7.2% of sales for the fiscal second quarter of 2010, compared with 5.5% of sales for the fiscal second

- 13 -

quarter of 2009." Moreover, the Company announced that its private label sales accounted for only 38% of wholesale sales in the fiscal second quarter of 2010, compared to 42% of wholesale sales in the fiscal second quarter of 2009 – a decline of 4%. Defendant Rudolph, commenting on the results, stated, in pertinent part, as follows:

> We are pleased to report strong sales growth with improved gross profits. However, because of the increasing competitive nature of the private label business, we anticipate gross profits for our private label business to decrease for the remainder of fiscal 2010. This should adversely affect gross profits for our wholesale division during this period. To address this issue, we have begun the process of initiating additional improvements in supply chain management. We are also increasing our focus on our branded product sales, which traditionally have higher gross profits. Our financial strength continues to play a vital role in generating future growth and shareholder value.

33.     In response to the unexpected rise in advertising costs and a slowdown of sales in its private label business, shares of the Company's stock fell $9.66 per share, or 21%, to close at $37.24 per share, on unusually heavy trading volume.

34.     The market for NBTY common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, NBTY common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired NBTY common stock relying upon the integrity of the market price of NBTY common stock and market information relating to NBTY, and have been damaged thereby.

35.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of NBTY common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

- 14 -

36.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about NBTY's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of NBTY and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

### Additional Scienter Allegations

37.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding NBTY, their control over, and/or receipt and/or modification of NBTY's allegedly materially misleading misstatements and/or their associations with the Company, which made them privy to confidential proprietary information concerning NBTY, participated in the fraudulent scheme alleged herein.

38.     Defendants were further motivated to engage in this course of conduct in order to allow the Individual Defendants and certain Company insiders to collectively sell 1,655,063 shares

- 15 -

of their personally-held NBTY common stock for gross proceeds in excess of $73 million.  The

following chart sets forth the insider trading:

| Insider | Date | Shares | Price | Proceeds |
|---------|------|--------|-------|----------|
| GLENN COHEN | 11/25/09 | 12,375 | $41.99 | $519,626 |
| | 11/25/09 | 6,800 | $41.98 | $285,464 |
| | 11/25/09 | 2,800 | $41.94 | $117,432 |
| | 11/25/09 | 2,600 | $41.96 | $109,096 |
| | 11/30/09 | 1,009 | $40.01 | $40,370 |
| | 11/30/09 | 1,000 | $40.00 | $40,000 |
| | 11/30/09 | 991 | $39.99 | $39,630 |
| | 11/30/09 | 500 | $40.02 | $20,010 |
| | 11/30/09 | 500 | $40.03 | $20,015 |
| | 11/30/09 | 500 | $40.05 | $20,025 |
| | 11/30/09 | 500 | $40.07 | $20,035 |
| | 02/25/10 | 4,200 | $45.08 | $189,336 |
| | 02/25/10 | 800 | $45.07 | $36,056 |
| | | 34,575 | | $1,457,095 |
| | | | | |
| JAMES FLAHERTY | 02/03/10 | 2,100 | $45.94 | $96,474 |
| | 02/03/10 | 1,856 | $45.95 | $85,283 |
| | 02/03/10 | 1,200 | $45.91 | $55,092 |
| | 02/03/10 | 1,100 | $45.93 | $50,523 |
| | 02/03/10 | 1,100 | $45.96 | $50,556 |
| | 02/03/10 | 1,000 | $45.97 | $45,970 |
| | 02/03/10 | 800 | $45.90 | $36,720 |
| | 02/03/10 | 600 | $45.92 | $27,552 |
| | 02/03/10 | 244 | $45.98 | $11,219 |
| | | 10,000 | | $459,389 |
| | | | | |
| HARVEY KAMIL | 11/16/09 | 26,657 | $42.00 | $1,119,594 |
| | 11/16/09 | 5,303 | $42.02 | $222,832 |
| | 11/16/09 | 5,300 | $42.40 | $224,720 |
| | 11/16/09 | 4,653 | $42.03 | $195,566 |
| | 11/16/09 | 3,700 | $42.30 | $156,510 |
| | 11/16/09 | 3,600 | $42.37 | $152,532 |
| | 11/16/09 | 3,014 | $42.34 | $127,613 |
| | 11/16/09 | 2,900 | $42.35 | $122,815 |
| | 11/16/09 | 2,800 | $42.49 | $118,972 |
| | 11/16/09 | 2,800 | $42.31 | $118,468 |
| | 11/16/09 | 2,721 | $42.32 | $115,153 |
| | 11/16/09 | 2,700 | $42.24 | $114,048 |
| | 11/16/09 | 2,651 | $42.38 | $112,349 |
| | 11/16/09 | 2,576 | $42.48 | $109,428 |
| | 11/16/09 | 2,400 | $42.08 | $100,992 |
| | 11/16/09 | 2,300 | $42.44 | $97,612 |
| | 11/16/09 | 2,300 | $42.47 | $97,681 |
| | 11/16/09 | 2,201 | $42.39 | $93,300 |
| | 11/16/09 | 2,000 | $42.52 | $85,040 |
| | 11/16/09 | 1,900 | $42.36 | $80,484 |
| | 11/16/09 | 1,900 | $42.50 | $80,750 |

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| | 11/16/09 | 1,800 | $42.11 | $75,798 |
| | 11/16/09 | 1,700 | $42.01 | $71,417 |
| | 11/16/09 | 1,700 | $42.75 | $72,675 |
| | 11/16/09 | 1,700 | $42.43 | $72,131 |
| | 11/16/09 | 1,500 | $42.72 | $64,080 |
| | 11/16/09 | 1,400 | $42.73 | $59,822 |
| | 11/16/09 | 1,400 | $42.42 | $59,388 |
| | 11/16/09 | 1,400 | $42.25 | $59,150 |
| | 11/16/09 | 1,300 | $42.09 | $54,717 |
| | 11/16/09 | 1,300 | $42.46 | $55,198 |
| | 11/16/09 | 1,300 | $42.55 | $55,315 |
| | 11/16/09 | 1,200 | $42.04 | $50,448 |
| | 11/16/09 | 1,200 | $42.20 | $50,640 |
| | 11/16/09 | 1,200 | $42.21 | $50,652 |
| | 11/16/09 | 1,135 | $42.10 | $47,784 |
| | 11/16/09 | 1,100 | $42.41 | $46,651 |
| | 11/16/09 | 1,100 | $42.23 | $46,453 |
| | 11/16/09 | 1,000 | $42.22 | $42,220 |
| | 11/16/09 | 1,000 | $42.53 | $42,530 |
| | 11/16/09 | 1,000 | $42.29 | $42,290 |
| | 11/16/09 | 992 | $42.28 | $41,942 |
| | 11/16/09 | 900 | $42.05 | $37,845 |
| | 11/16/09 | 900 | $42.51 | $38,259 |
| | 11/16/09 | 900 | $42.54 | $38,286 |
| | 11/16/09 | 840 | $42.06 | $35,330 |
| | 11/16/09 | 828 | $42.45 | $35,149 |
| | 11/16/09 | 800 | $42.76 | $34,208 |
| | 11/16/09 | 800 | $42.27 | $33,816 |
| | 11/16/09 | 600 | $42.66 | $25,596 |
| | 11/16/09 | 600 | $42.71 | $25,626 |
| | 11/16/09 | 600 | $42.26 | $25,356 |
| | 11/16/09 | 542 | $42.33 | $22,943 |
| | 11/16/09 | 500 | $42.70 | $21,350 |
| | 11/16/09 | 500 | $42.07 | $21,035 |
| | 11/16/09 | 500 | $42.77 | $21,385 |
| | 11/16/09 | 500 | $42.12 | $21,060 |
| | 11/16/09 | 500 | $42.58 | $21,290 |
| | 11/16/09 | 500 | $42.65 | $21,325 |
| | 11/16/09 | 400 | $42.56 | $17,024 |
| | 11/16/09 | 300 | $42.59 | $12,777 |
| | 11/16/09 | 300 | $42.63 | $12,789 |
| | 11/16/09 | 200 | $42.68 | $8,536 |
| | 11/16/09 | 200 | $42.74 | $8,548 |
| | 11/16/09 | 200 | $42.80 | $8,560 |
| | 11/16/09 | 200 | $42.14 | $8,428 |
| | 11/16/09 | 200 | $42.15 | $8,430 |
| | 11/16/09 | 200 | $42.57 | $8,514 |
| | 11/16/09 | 100 | $42.67 | $4,267 |
| | 11/16/09 | 100 | $42.19 | $4,219 |
| | 11/16/09 | 100 | $42.62 | $4,262 |
| | 11/16/09 | 100 | $42.64 | $4,264 |

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| | 11/17/09 | 6,100 | $43.00 | $262,300 |
| | 11/17/09 | 4,900 | $42.95 | $210,455 |
| | 11/17/09 | 4,835 | $42.90 | $207,422 |
| | 11/17/09 | 4,631 | $42.94 | $198,855 |
| | 11/17/09 | 4,500 | $43.53 | $195,885 |
| | 11/17/09 | 4,000 | $43.25 | $173,000 |
| | 11/17/09 | 3,555 | $42.91 | $152,545 |
| | 11/17/09 | 3,301 | $43.54 | $143,726 |
| | 11/17/09 | 3,300 | $43.48 | $143,484 |
| | 11/17/09 | 3,200 | $43.35 | $138,720 |
| | 11/17/09 | 3,200 | $43.23 | $138,336 |
| | 11/17/09 | 3,200 | $43.24 | $138,368 |
| | 11/17/09 | 3,100 | $42.93 | $133,083 |
| | 11/17/09 | 3,065 | $43.05 | $131,948 |
| | 11/17/09 | 3,000 | $42.99 | $128,970 |
| | 11/17/09 | 3,000 | $42.89 | $128,670 |
| | 11/17/09 | 2,800 | $43.26 | $121,128 |
| | 11/17/09 | 2,700 | $43.27 | $116,829 |
| | 11/17/09 | 2,600 | $43.34 | $112,684 |
| | 11/17/09 | 2,600 | $43.40 | $112,840 |
| | 11/17/09 | 2,600 | $43.20 | $112,320 |
| | 11/17/09 | 2,600 | $43.55 | $113,230 |
| | 11/17/09 | 2,598 | $43.31 | $112,519 |
| | 11/17/09 | 2,554 | $42.70 | $109,056 |
| | 11/17/09 | 2,500 | $43.12 | $107,800 |
| | 11/17/09 | 2,300 | $43.30 | $99,590 |
| | 11/17/09 | 2,200 | $43.28 | $95,216 |
| | 11/17/09 | 2,200 | $43.13 | $94,886 |
| | 11/17/09 | 2,100 | $43.62 | $91,602 |
| | 11/17/09 | 2,000 | $42.98 | $85,960 |
| | 11/17/09 | 2,000 | $43.32 | $86,640 |
| | 11/17/09 | 1,900 | $43.39 | $82,441 |
| | 11/17/09 | 1,600 | $42.88 | $68,608 |
| | 11/17/09 | 1,600 | $43.56 | $69,696 |
| | 11/17/09 | 1,500 | $43.46 | $65,190 |
| | 11/17/09 | 1,400 | $42.68 | $59,752 |
| | 11/17/09 | 1,400 | $42.84 | $59,976 |
| | 11/17/09 | 1,400 | $43.51 | $60,914 |
| | 11/17/09 | 1,400 | $42.92 | $60,088 |
| | 11/17/09 | 1,400 | $43.58 | $61,012 |
| | 11/17/09 | 1,300 | $42.59 | $55,367 |
| | 11/17/09 | 1,300 | $43.14 | $56,082 |
| | 11/17/09 | 1,237 | $43.36 | $53,636 |
| | 11/17/09 | 1,200 | $42.66 | $51,192 |
| | 11/17/09 | 1,200 | $43.49 | $52,188 |
| | 11/17/09 | 1,200 | $43.19 | $51,828 |
| | 11/17/09 | 1,100 | $42.73 | $47,003 |
| | 11/17/09 | 1,100 | $42.86 | $47,146 |
| | 11/17/09 | 1,000 | $43.63 | $43,630 |
| | 11/17/09 | 1,000 | $43.08 | $43,080 |
| | 11/17/09 | 1,000 | $43.11 | $43,110 |

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| | 11/17/09 | 1,000 | $43.15 | $43,150 |
| | 11/17/09 | 1,000 | $42.85 | $42,850 |
| | 11/17/09 | 1,000 | $43.22 | $43,220 |
| | 11/17/09 | 990 | $43.43 | $42,996 |
| | 11/17/09 | 900 | $42.61 | $38,349 |
| | 11/17/09 | 900 | $42.97 | $38,673 |
| | 11/17/09 | 900 | $43.01 | $38,709 |
| | 11/17/09 | 900 | $43.37 | $39,033 |
| | 11/17/09 | 900 | $43.41 | $39,069 |
| | 11/17/09 | 800 | $43.29 | $34,632 |
| | 11/17/09 | 800 | $42.64 | $34,112 |
| | 11/17/09 | 800 | $42.69 | $34,152 |
| | 11/17/09 | 800 | $43.17 | $34,536 |
| | 11/17/09 | 775 | $43.38 | $33,620 |
| | 11/17/09 | 700 | $43.59 | $30,513 |
| | 11/17/09 | 700 | $42.65 | $29,855 |
| | 11/17/09 | 700 | $43.33 | $30,331 |
| | 11/17/09 | 700 | $42.72 | $29,904 |
| | 11/17/09 | 601 | $43.60 | $26,204 |
| | 11/17/09 | 600 | $42.96 | $25,776 |
| | 11/17/09 | 600 | $43.61 | $26,166 |
| | 11/17/09 | 600 | $42.63 | $25,578 |
| | 11/17/09 | 600 | $43.64 | $26,184 |
| | 11/17/09 | 600 | $43.07 | $25,842 |
| | 11/17/09 | 600 | $43.09 | $25,854 |
| | 11/17/09 | 600 | $43.16 | $25,896 |
| | 11/17/09 | 600 | $42.87 | $25,722 |
| | 11/17/09 | 600 | $43.57 | $26,142 |
| | 11/17/09 | 560 | $43.42 | $24,315 |
| | 11/17/09 | 499 | $42.71 | $21,312 |
| | 11/17/09 | 400 | $42.60 | $17,040 |
| | 11/17/09 | 400 | $43.68 | $17,472 |
| | 11/17/09 | 400 | $43.70 | $17,480 |
| | 11/17/09 | 400 | $43.52 | $17,408 |
| | 11/17/09 | 300 | $43.10 | $12,930 |
| | 11/17/09 | 300 | $42.75 | $12,825 |
| | 11/17/09 | 300 | $42.77 | $12,831 |
| | 11/17/09 | 300 | $43.44 | $13,032 |
| | 11/17/09 | 299 | $43.21 | $12,920 |
| | 11/17/09 | 200 | $42.74 | $8,548 |
| | 11/17/09 | 200 | $42.79 | $8,558 |
| | 11/17/09 | 100 | $43.71 | $4,371 |
| | 11/17/09 | 100 | $43.06 | $4,306 |
| | 11/17/09 | 100 | $42.78 | $4,278 |
| | 11/17/09 | 100 | $42.81 | $4,281 |
| | 11/17/09 | 100 | $42.82 | $4,282 |
| | 11/17/09 | 100 | $43.47 | $4,347 |
| | 11/17/09 | 100 | $43.18 | $4,318 |
| | 11/18/09 | 10,900 | $43.25 | $471,425 |
| | 11/18/09 | 8,501 | $43.24 | $367,583 |
| | 11/18/09 | 7,701 | $43.20 | $332,683 |

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| | 11/18/09 | 6,500 | $43.19 | $280,735 |
| | 11/18/09 | 6,500 | $43.28 | $281,320 |
| | 11/18/09 | 5,901 | $43.22 | $255,041 |
| | 11/18/09 | 5,505 | $43.23 | $237,981 |
| | 11/18/09 | 5,200 | $43.21 | $224,692 |
| | 11/18/09 | 4,401 | $43.26 | $190,387 |
| | 11/18/09 | 4,100 | $43.18 | $177,038 |
| | 11/18/09 | 3,900 | $43.29 | $168,831 |
| | 11/18/09 | 3,610 | $43.30 | $156,313 |
| | 11/18/09 | 3,500 | $43.27 | $151,445 |
| | 11/18/09 | 3,200 | $43.15 | $138,080 |
| | 11/18/09 | 3,200 | $43.16 | $138,112 |
| | 11/18/09 | 2,900 | $43.32 | $125,628 |
| | 11/18/09 | 2,600 | $43.17 | $112,242 |
| | 11/18/09 | 1,404 | $43.31 | $60,807 |
| | 11/18/09 | 1,400 | $43.05 | $60,270 |
| | 11/18/09 | 1,200 | $43.00 | $51,600 |
| | 11/18/09 | 1,100 | $43.07 | $47,377 |
| | 11/18/09 | 1,000 | $43.35 | $43,350 |
| | 11/18/09 | 900 | $43.02 | $38,718 |
| | 11/18/09 | 841 | $43.12 | $36,264 |
| | 11/18/09 | 700 | $43.13 | $30,191 |
| | 11/18/09 | 600 | $43.45 | $26,070 |
| | 11/18/09 | 500 | $42.97 | $21,485 |
| | 11/18/09 | 500 | $43.04 | $21,520 |
| | 11/18/09 | 500 | $43.14 | $21,570 |
| | 11/18/09 | 400 | $43.01 | $17,204 |
| | 11/18/09 | 400 | $43.08 | $17,232 |
| | 11/18/09 | 400 | $43.33 | $17,332 |
| | 11/18/09 | 25 | $43.39 | $1,085 |
| | 11/18/09 | 11 | $43.43 | $478 |
| | 11/19/09 | 8,433 | $42.50 | $358,403 |
| | 11/19/09 | 7,053 | $42.57 | $300,246 |
| | 11/19/09 | 5,810 | $42.51 | $246,983 |
| | 11/19/09 | 5,603 | $42.48 | $238,015 |
| | 11/19/09 | 5,601 | $42.52 | $238,155 |
| | 11/19/09 | 5,365 | $42.53 | $228,173 |
| | 11/19/09 | 4,299 | $42.56 | $182,965 |
| | 11/19/09 | 3,900 | $42.58 | $166,062 |
| | 11/19/09 | 3,700 | $42.44 | $157,028 |
| | 11/19/09 | 3,700 | $42.55 | $157,435 |
| | 11/19/09 | 3,600 | $42.54 | $153,144 |
| | 11/19/09 | 3,100 | $42.49 | $131,719 |
| | 11/19/09 | 2,700 | $42.59 | $114,993 |
| | 11/19/09 | 2,500 | $42.70 | $106,750 |
| | 11/19/09 | 2,500 | $42.71 | $106,775 |
| | 11/19/09 | 2,470 | $42.47 | $104,901 |
| | 11/19/09 | 2,400 | $42.45 | $101,880 |
| | 11/19/09 | 2,400 | $42.46 | $101,904 |
| | 11/19/09 | 2,300 | $42.43 | $97,589 |
| | 11/19/09 | 2,200 | $42.61 | $93,742 |

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| | 11/19/09 | 1,800 | $42.60 | $76,680 |
| | 11/19/09 | 1,439 | $42.65 | $61,373 |
| | 11/19/09 | 1,400 | $42.34 | $59,276 |
| | 11/19/09 | 1,400 | $42.42 | $59,388 |
| | 11/19/09 | 1,200 | $42.91 | $51,492 |
| | 11/19/09 | 1,100 | $42.31 | $46,541 |
| | 11/19/09 | 1,100 | $42.64 | $46,904 |
| | 11/19/09 | 1,100 | $42.73 | $47,003 |
| | 11/19/09 | 1,000 | $42.66 | $42,660 |
| | 11/19/09 | 800 | $42.63 | $34,104 |
| | 11/19/09 | 700 | $42.33 | $29,631 |
| | 11/19/09 | 700 | $42.81 | $29,967 |
| | 11/19/09 | 600 | $42.93 | $25,758 |
| | 11/19/09 | 600 | $43.11 | $25,866 |
| | 11/19/09 | 599 | $42.75 | $25,607 |
| | 11/19/09 | 500 | $42.69 | $21,345 |
| | 11/19/09 | 427 | $42.38 | $18,096 |
| | 11/19/09 | 401 | $42.78 | $17,155 |
| | 11/19/09 | 400 | $42.35 | $16,940 |
| | 11/19/09 | 400 | $42.68 | $17,072 |
| | 11/19/09 | 400 | $42.40 | $16,960 |
| | 11/19/09 | 400 | $42.80 | $17,120 |
| | 11/19/09 | 300 | $42.36 | $12,708 |
| | 11/19/09 | 300 | $42.72 | $12,816 |
| | 11/19/09 | 200 | $42.62 | $8,524 |
| | 11/19/09 | 200 | $42.41 | $8,482 |
| | 11/19/09 | 200 | $42.82 | $8,564 |
| | 11/19/09 | 100 | $42.32 | $4,232 |
| | 11/19/09 | 100 | $42.39 | $4,239 |
| | 11/19/09 | 100 | $42.74 | $4,274 |
| | 11/19/09 | 100 | $42.76 | $4,276 |
| | 11/19/09 | 100 | $42.77 | $4,277 |
| | 11/19/09 | 100 | $42.86 | $4,286 |
| | 11/19/09 | 100 | $42.90 | $4,290 |
| | 01/06/10 | 65,114 | $45.00 | $2,930,130 |
| | 01/06/10 | 4,415 | $45.01 | $198,719 |
| | 01/06/10 | 2,288 | $45.05 | $103,074 |
| | 01/06/10 | 2,115 | $45.04 | $95,260 |
| | 01/06/10 | 1,600 | $45.03 | $72,048 |
| | 01/06/10 | 1,400 | $45.02 | $63,028 |
| | 01/11/10 | 500 | $45.00 | $22,500 |
| | 01/12/10 | 31,876 | $45.00 | $1,434,420 |
| | 01/12/10 | 14,700 | $45.30 | $665,910 |
| | 01/12/10 | 6,005 | $45.03 | $270,405 |
| | 01/12/10 | 4,300 | $45.29 | $194,747 |
| | 01/12/10 | 3,700 | $45.06 | $166,722 |
| | 01/12/10 | 3,300 | $45.08 | $148,764 |
| | 01/12/10 | 3,200 | $45.10 | $144,320 |
| | 01/12/10 | 2,968 | $45.02 | $133,619 |
| | 01/12/10 | 2,600 | $45.32 | $117,832 |
| | 01/12/10 | 2,500 | $45.61 | $114,025 |

| Insider | Date | Shares | Price | Proceeds |
|---------|------|--------|-------|----------|
| | 01/12/10 | 2,300 | $45.05 | $103,615 |
| | 01/12/10 | 2,200 | $45.01 | $99,022 |
| | 01/12/10 | 2,100 | $45.33 | $95,193 |
| | 01/12/10 | 2,100 | $45.52 | $95,592 |
| | 01/12/10 | 1,800 | $45.07 | $81,126 |
| | 01/12/10 | 1,700 | $45.75 | $77,775 |
| | 01/12/10 | 1,700 | $45.16 | $76,772 |
| | 01/12/10 | 1,400 | $45.19 | $63,266 |
| | 01/12/10 | 1,400 | $45.20 | $63,280 |
| | 01/12/10 | 1,400 | $45.60 | $63,840 |
| | 01/12/10 | 1,400 | $45.26 | $63,364 |
| | 01/12/10 | 1,300 | $45.35 | $58,955 |
| | 01/12/10 | 1,300 | $45.09 | $58,617 |
| | 01/12/10 | 1,300 | $45.58 | $59,254 |
| | 01/12/10 | 1,288 | $45.24 | $58,269 |
| | 01/12/10 | 1,231 | $45.56 | $56,084 |
| | 01/12/10 | 1,200 | $45.70 | $54,840 |
| | 01/12/10 | 1,100 | $45.39 | $49,929 |
| | 01/12/10 | 1,100 | $45.11 | $49,621 |
| | 01/12/10 | 1,100 | $45.13 | $49,643 |
| | 01/12/10 | 1,100 | $45.14 | $49,654 |
| | 01/12/10 | 1,100 | $45.53 | $50,083 |
| | 01/12/10 | 1,000 | $45.73 | $45,730 |
| | 01/12/10 | 1,000 | $45.49 | $45,490 |
| | 01/12/10 | 900 | $45.38 | $40,842 |
| | 01/12/10 | 900 | $45.69 | $41,121 |
| | 01/12/10 | 800 | $45.34 | $36,272 |
| | 01/12/10 | 800 | $45.62 | $36,496 |
| | 01/12/10 | 800 | $45.71 | $36,568 |
| | 01/12/10 | 700 | $45.04 | $31,528 |
| | 01/12/10 | 700 | $45.43 | $31,801 |
| | 01/12/10 | 700 | $45.15 | $31,605 |
| | 01/12/10 | 645 | $45.42 | $29,296 |
| | 01/12/10 | 600 | $45.36 | $27,216 |
| | 01/12/10 | 555 | $45.40 | $25,197 |
| | 01/12/10 | 500 | $45.54 | $22,770 |
| | 01/12/10 | 400 | $45.17 | $18,068 |
| | 01/12/10 | 400 | $45.25 | $18,100 |
| | 01/12/10 | 400 | $45.28 | $18,112 |
| | 01/12/10 | 300 | $45.45 | $13,635 |
| | 01/12/10 | 300 | $45.55 | $13,665 |
| | 01/12/10 | 300 | $45.59 | $13,677 |
| | 01/12/10 | 200 | $45.74 | $9,148 |
| | 01/12/10 | 200 | $45.79 | $9,158 |
| | 01/12/10 | 200 | $45.44 | $9,088 |
| | 01/12/10 | 200 | $45.27 | $9,054 |
| | 01/12/10 | 200 | $45.68 | $9,136 |
| | 01/12/10 | 200 | $45.31 | $9,062 |
| | 01/12/10 | 100 | $45.72 | $4,572 |
| | 01/12/10 | 100 | $45.76 | $4,576 |
| | 01/12/10 | 100 | $45.77 | $4,577 |

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| | 01/12/10 | 100 | $45.41 | $4,541 |
| | 01/12/10 | 100 | $45.80 | $4,580 |
| | 01/12/10 | 100 | $45.51 | $4,551 |
| | 01/12/10 | 100 | $45.18 | $4,518 |
| | 01/12/10 | 100 | $45.57 | $4,557 |
| | 01/12/10 | 100 | $45.65 | $4,565 |
| | | 677,713 | | $29,475,213 |
| | | | | |
| ARTHUR RUDOLPH | 01/06/10 | 59,372 | $45.00 | $2,671,740 |
| | 01/06/10 | 13,658 | $45.05 | $615,293 |
| | 01/06/10 | 5,000 | $45.01 | $225,050 |
| | 01/06/10 | 5,000 | $45.03 | $225,150 |
| | 01/06/10 | 2,500 | $45.02 | $112,550 |
| | 01/06/10 | 2,500 | $45.04 | $112,600 |
| | 01/11/10 | 5,368 | $45.00 | $241,560 |
| | 01/12/10 | 51,502 | $45.00 | $2,317,590 |
| | 01/12/10 | 11,300 | $45.18 | $510,534 |
| | 01/12/10 | 11,120 | $45.04 | $500,845 |
| | 01/12/10 | 7,900 | $45.03 | $355,737 |
| | 01/12/10 | 6,650 | $45.01 | $299,317 |
| | 01/12/10 | 6,000 | $45.02 | $270,120 |
| | 01/12/10 | 5,700 | $45.15 | $257,355 |
| | 01/12/10 | 5,700 | $45.23 | $257,811 |
| | 01/12/10 | 5,100 | $45.20 | $230,520 |
| | 01/12/10 | 3,700 | $45.05 | $166,685 |
| | 01/12/10 | 3,639 | $45.31 | $164,883 |
| | 01/12/10 | 3,500 | $45.11 | $157,885 |
| | 01/12/10 | 2,900 | $45.10 | $130,790 |
| | 01/12/10 | 2,300 | $45.25 | $104,075 |
| | 01/12/10 | 2,200 | $45.24 | $99,528 |
| | 01/12/10 | 2,015 | $45.37 | $91,421 |
| | 01/12/10 | 2,000 | $45.22 | $90,440 |
| | 01/12/10 | 1,780 | $45.17 | $80,403 |
| | 01/12/10 | 1,700 | $45.28 | $76,976 |
| | 01/12/10 | 1,700 | $45.34 | $77,078 |
| | 01/12/10 | 1,400 | $45.12 | $63,168 |
| | 01/12/10 | 1,300 | $45.14 | $58,682 |
| | 01/12/10 | 1,000 | $45.13 | $45,130 |
| | 01/12/10 | 1,000 | $45.35 | $45,350 |
| | 01/12/10 | 900 | $45.36 | $40,824 |
| | 01/12/10 | 600 | $45.38 | $27,228 |
| | 01/12/10 | 500 | $45.16 | $22,580 |
| | 01/12/10 | 496 | $45.32 | $22,479 |
| | 01/12/10 | 300 | $45.26 | $13,578 |
| | 01/12/10 | 300 | $45.27 | $13,581 |
| | 01/12/10 | 200 | $45.07 | $9,014 |
| | 01/12/10 | 200 | $45.21 | $9,042 |
| | | 240,000 | | $10,814,590 |
| | | | | |
| SCOTT RUDOLPH | 11/23/09 | 35,523 | $42.75 | $1,518,608 |
| | 11/23/09 | 30,600 | $42.70 | $1,306,620 |

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| | 11/23/09 | 27,660 | $42.05 | $1,163,103 |
| | 11/23/09 | 22,100 | $42.40 | $937,040 |
| | 11/23/09 | 16,820 | $42.20 | $709,804 |
| | 11/23/09 | 16,046 | $42.80 | $686,769 |
| | 11/23/09 | 14,354 | $42.25 | $606,457 |
| | 11/23/09 | 14,069 | $42.33 | $595,541 |
| | 11/23/09 | 13,398 | $42.12 | $564,324 |
| | 11/23/09 | 13,082 | $42.50 | $555,985 |
| | 11/23/09 | 11,932 | $42.30 | $504,724 |
| | 11/23/09 | 10,900 | $42.00 | $457,800 |
| | 11/23/09 | 10,681 | $42.04 | $449,029 |
| | 11/23/09 | 10,068 | $42.08 | $423,661 |
| | 11/23/09 | 9,542 | $42.76 | $408,016 |
| | 11/23/09 | 8,900 | $42.02 | $373,978 |
| | 11/23/09 | 8,585 | $42.10 | $361,429 |
| | 11/23/09 | 8,413 | $42.71 | $359,319 |
| | 11/23/09 | 7,319 | $42.19 | $308,789 |
| | 11/23/09 | 7,300 | $42.69 | $311,637 |
| | 11/23/09 | 6,500 | $42.09 | $273,585 |
| | 11/23/09 | 6,100 | $42.11 | $256,871 |
| | 11/23/09 | 5,850 | $42.72 | $249,912 |
| | 11/23/09 | 5,797 | $42.14 | $244,286 |
| | 11/23/09 | 5,400 | $42.27 | $228,258 |
| | 11/23/09 | 5,386 | $42.39 | $228,313 |
| | 11/23/09 | 5,213 | $42.55 | $221,813 |
| | 11/23/09 | 5,178 | $42.35 | $219,288 |
| | 11/23/09 | 5,000 | $42.34 | $211,700 |
| | 11/23/09 | 4,898 | $42.77 | $209,487 |
| | 11/23/09 | 4,802 | $42.31 | $203,173 |
| | 11/23/09 | 4,570 | $42.64 | $194,865 |
| | 11/23/09 | 4,562 | $42.60 | $194,341 |
| | 11/23/09 | 4,400 | $42.13 | $185,372 |
| | 11/23/09 | 4,367 | $42.43 | $185,292 |
| | 11/23/09 | 4,079 | $42.81 | $174,622 |
| | 11/23/09 | 3,993 | $42.15 | $168,305 |
| | 11/23/09 | 3,761 | $42.26 | $158,940 |
| | 11/23/09 | 3,733 | $42.42 | $158,354 |
| | 11/23/09 | 3,701 | $42.38 | $156,848 |
| | 11/23/09 | 3,652 | $42.17 | $154,005 |
| | 11/23/09 | 3,600 | $42.62 | $153,432 |
| | 11/23/09 | 3,500 | $42.65 | $149,275 |
| | 11/23/09 | 3,400 | $42.16 | $143,344 |
| | 11/23/09 | 3,188 | $42.18 | $134,470 |
| | 11/23/09 | 3,186 | $42.32 | $134,832 |
| | 11/23/09 | 3,073 | $42.66 | $131,094 |
| | 11/23/09 | 3,070 | $42.61 | $130,813 |
| | 11/23/09 | 3,000 | $42.58 | $127,740 |
| | 11/23/09 | 2,900 | $42.37 | $122,873 |
| | 11/23/09 | 2,900 | $42.78 | $124,062 |
| | 11/23/09 | 2,885 | $42.44 | $122,439 |
| | 11/23/09 | 2,824 | $42.53 | $120,105 |

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| | 11/23/09 | 2,753 | $42.79 | $117,801 |
| | 11/23/09 | 2,639 | $42.59 | $112,395 |
| | 11/23/09 | 2,574 | $42.22 | $108,674 |
| | 11/23/09 | 2,500 | $42.73 | $106,825 |
| | 11/23/09 | 2,400 | $42.23 | $101,352 |
| | 11/23/09 | 2,390 | $42.63 | $101,886 |
| | 11/23/09 | 2,300 | $42.57 | $97,911 |
| | 11/23/09 | 2,200 | $42.74 | $94,028 |
| | 11/23/09 | 2,100 | $42.36 | $88,956 |
| | 11/23/09 | 2,100 | $42.47 | $89,187 |
| | 11/23/09 | 2,087 | $42.54 | $88,781 |
| | 11/23/09 | 2,064 | $42.67 | $88,071 |
| | 11/23/09 | 2,000 | $42.68 | $85,360 |
| | 11/23/09 | 2,000 | $42.21 | $84,420 |
| | 11/23/09 | 1,900 | $42.46 | $80,674 |
| | 11/23/09 | 1,900 | $42.82 | $81,358 |
| | 11/23/09 | 1,700 | $42.49 | $72,233 |
| | 11/23/09 | 1,694 | $42.51 | $72,012 |
| | 11/23/09 | 1,650 | $42.85 | $70,703 |
| | 11/23/09 | 1,553 | $42.89 | $66,608 |
| | 11/23/09 | 1,500 | $42.90 | $64,350 |
| | 11/23/09 | 1,500 | $42.84 | $64,260 |
| | 11/23/09 | 1,414 | $42.45 | $60,024 |
| | 11/23/09 | 1,400 | $42.56 | $59,584 |
| | 11/23/09 | 1,325 | $42.83 | $56,750 |
| | 11/23/09 | 1,300 | $42.41 | $55,133 |
| | 11/23/09 | 1,100 | $42.52 | $46,772 |
| | 11/23/09 | 1,100 | $42.24 | $46,464 |
| | 11/23/09 | 1,100 | $42.87 | $47,157 |
| | 11/23/09 | 1,000 | $42.97 | $42,970 |
| | 11/23/09 | 1,000 | $42.48 | $42,480 |
| | 11/23/09 | 1,000 | $42.88 | $42,880 |
| | 11/23/09 | 944 | $42.07 | $39,714 |
| | 11/23/09 | 900 | $42.91 | $38,619 |
| | 11/23/09 | 700 | $42.06 | $29,442 |
| | 11/23/09 | 700 | $42.28 | $29,596 |
| | 11/23/09 | 700 | $42.29 | $29,603 |
| | 11/23/09 | 600 | $42.99 | $25,794 |
| | 11/23/09 | 500 | $42.95 | $21,475 |
| | 11/23/09 | 500 | $42.98 | $21,490 |
| | 11/23/09 | 500 | $42.86 | $21,430 |
| | 11/23/09 | 300 | $42.92 | $12,876 |
| | 11/23/09 | 300 | $42.94 | $12,882 |
| | 11/23/09 | 200 | $42.03 | $8,406 |
| | 11/23/09 | 153 | $42.01 | $6,428 |
| | | 500,000 | | $21,210,552 |
| | | | | |
| GLENN SCHNEIDER | 03/09/10 | 80,126 | $50.00 | $4,006,300 |
| | 03/09/10 | 69,028 | $50.00 | $3,451,400 |
| | 03/10/10 | 11,836 | $50.00 | $591,800 |
| | 03/10/10 | 6,074 | $50.02 | $303,821 |

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| | 03/10/10 | 4,778 | $50.00 | $238,900 |
| | 03/10/10 | 3,672 | $50.00 | $183,600 |
| | 03/10/10 | 3,503 | $50.03 | $175,255 |
| | 03/10/10 | 3,442 | $50.01 | $172,134 |
| | 03/10/10 | 1,122 | $50.01 | $56,111 |
| | 03/10/10 | 746 | $50.05 | $37,337 |
| | 03/10/10 | 742 | $50.10 | $37,174 |
| | 03/10/10 | 723 | $50.12 | $36,237 |
| | 03/10/10 | 615 | $50.03 | $30,768 |
| | 03/10/10 | 565 | $50.10 | $28,307 |
| | 03/10/10 | 500 | $50.12 | $25,060 |
| | 03/10/10 | 410 | $50.15 | $20,562 |
| | 03/10/10 | 380 | $50.15 | $19,057 |
| | 03/10/10 | 330 | $50.04 | $16,513 |
| | 03/10/10 | 325 | $50.05 | $16,266 |
| | 03/10/10 | 277 | $50.09 | $13,875 |
| | 03/10/10 | 225 | $50.04 | $11,259 |
| | 03/10/10 | 220 | $50.07 | $11,015 |
| | 03/10/10 | 175 | $50.09 | $8,766 |
| | 03/10/10 | 156 | $50.11 | $7,817 |
| | 03/10/10 | 150 | $50.07 | $7,511 |
| | 03/10/10 | 148 | $50.16 | $7,424 |
| | 03/10/10 | 110 | $50.06 | $5,507 |
| | 03/10/10 | 100 | $50.16 | $5,016 |
| | 03/10/10 | 100 | $50.11 | $5,011 |
| | 03/10/10 | 79 | $50.13 | $3,960 |
| | 03/10/10 | 75 | $50.06 | $3,755 |
| | 03/10/10 | 73 | $50.17 | $3,662 |
| | 03/10/10 | 54 | $50.08 | $2,704 |
| | 03/10/10 | 54 | $50.13 | $2,707 |
| | 03/10/10 | 50 | $50.17 | $2,509 |
| | 03/10/10 | 38 | $50.18 | $1,907 |
| | 03/10/10 | 38 | $50.22 | $1,908 |
| | 03/10/10 | 38 | $50.23 | $1,909 |
| | 03/10/10 | 37 | $50.14 | $1,855 |
| | 03/10/10 | 36 | $50.08 | $1,803 |
| | 03/10/10 | 25 | $50.18 | $1,255 |
| | 03/10/10 | 25 | $50.22 | $1,256 |
| | 03/10/10 | 25 | $50.23 | $1,256 |
| | 03/10/10 | 25 | $50.14 | $1,254 |
| | 03/11/10 | 1,525 | $50.00 | $76,250 |
| | | 192,775 | | $9,639,752 |
| | | | | |
| | | 1,655,063 | | $73,056,591 |

## Loss Causation/Economic Loss

39.    During the Class Period, as detailed herein, Defendants engaged in a scheme to
deceive the market and a course of conduct that artificially inflated the prices of NBTY common

stock and operated as a fraud or deceit on Class Period purchasers of NBTY common stock by failing to disclose and misrepresenting the adverse facts detailed herein. When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of NBTY common stock fell precipitously as the prior artificial inflation came out. As a result of their purchases of NBTY common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

40.     By failing to disclose to investors the adverse facts detailed herein, Defendants presented a misleading picture of NBTY's business and prospects. Defendants' false and misleading statements had the intended effect and caused NBTY common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $50.51 per share on April 15, 2010.

41.     As a direct result of the disclosures on April 27, 2010, the price of NBTY common stock fell precipitously. This drop removed the inflation from the price of NBTY common stock, causing real economic loss to investors who had purchased NBTY common stock during the Class Period.

42.     The 21% decline was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the price decline in NBTY common stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to Defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of NBTY common stock and the subsequent significant decline in the value of NBTY common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

- 27 -

## Applicability of Presumption of Reliance:
## Fraud on the Market Doctrine

43.     At all relevant times, the market for NBTY common stock was an efficient market for the following reasons, among others:

(a)     NBTY common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     as a regulated issuer, NBTY filed periodic public reports with the SEC and the NYSE;

(c)     NBTY regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     NBTY was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

44.     As a result of the foregoing, the market for NBTY common stock promptly digested current information regarding NBTY from all publicly available sources and reflected such information in the prices of the stock. Under these circumstances, all purchasers of NBTY common stock during the Class Period suffered similar injury through their purchase of NBTY common stock at artificially inflated prices and a presumption of reliance applies.

### No Safe Harbor

45.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

- 28 -

Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of NBTY who knew that those statements were false when made.

<h3 style="text-align:center">COUNT I</h3>

<b>Violation of Section 10(b) of<br>
the Exchange Act and Rule 10b-5<br>
Promulgated Thereunder Against All Defendants</b>

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

48.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

49.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for NBTY common stock. Plaintiff and the Class would not have purchased NBTY common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

50.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of NBTY common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

51.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of NBTY within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of NBTY, and their ownership of NBTY stock, the Individual Defendants had the power and authority to cause NBTY to engage in the wrongful conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: May 11, 2010

ROBBINS GELLER RUDMAN & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.

SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

DYER & BERENS LLP
JEFFREY A. BERENS
682 Grant Street
Denver, Colorado 80203
Telephone: (303) 861-1764
(303) 395-0393 (fax)

HOLZER, HOLZER & FISTEL, LLC
COREY D. HOLZER
MICHAEL I. FISTEL, JR.
200 Ashford Center North, Suite 300
Atlanta, Georgia 30338
Telephone: 770/392-0090
770/392-0029 (fax)

Attorneys for Plaintiff

- 31 -

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed the complaint and authorized its filing.

2.      Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.      Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost |
|---|---|---|---|
| NBTY | 04/16/2010 | 1336 | at 49.25 |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds |
|---|---|---|---|
| NBTY | 05/10/2010 | 1336 | at 38.05 |

5.      During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

6.      Plaintiff will not accept any payment for serving as a representative party on behalf

of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _10_ day of _May_, 2010 in _Howell_____, _NJ_____.
                                              City              State

(Signature) X___*John Hutchins*_____